The last case for argument this morning is 1536.13, District of Minnesota, David Hosea v. City of St. Paul et al. Welcome back, Mr. Lederman. Morning and your honors, may it please the court. This is a case involving claims of excessive force and false arrests that occurred about three years ago. I'd like to spend some time on both of these issues discussing the district court's dismissal and we're asking the court to reverse this case and send it back for trial. So, with regards to excessive force, the excessive force claim here, this court has time after time made clear that there is a difference, and there has to be a difference, between a person who is resisting arrest, either passively or actively, and forces used to take the person into custody. And on the other hand, a person who actually complies with police orders and submits himself to the police officers and is then afterwards assaulted anyway. And this court has made it clear, and we have cited many cases on page 17 of our initial brief, that even a person who is being violent or a person who is resisting arrest but then later becomes compliant, police officers cannot use any significant amount of force to take that person into custody. I understand, and this court has said many times, that every time that a person is taken into custody, some level of force is necessary. And so, police officers are allowed to use some level of force to take people into custody. So, for example, a person is handcuffed lawfully and then he suffers scratches and scrapes on his hands. Counsel, why don't you focus on the facts of this case? Yes. All right. So, what happened in this case, Your Honor, is Mr. Rosea was arguing with his wife. And he called the police, but then he changed his mind and he hung up the phone. Police officers showed up. The two defendant police officers came in this case. And they decided, they made a decision to walk into Mr. Rosea's house unannounced. They didn't knock. They didn't yell. They didn't do anything to announce. Did they hear anything outside that precipitated their entry? Absolutely. They heard yelling from inside the house, and we're not disputing that. And we're not disputing the fact that they potentially had the right to come into the house. We're not making a claim for an illegal entry here. What's important, Your Honor, is that these officers themselves, they wanted to surprise Mr. Rosea. That was the purpose of their unannounced entry. They didn't want to give him advance notice or anybody else inside the house that they were there. What happens when they enter is very quick and very simple. He has no idea who they are. Mr. Rosea also claims that their uniforms were covered up by their jackets. He didn't know they were police officers right away. Was he aware that someone had called the police? He was aware that he himself called the police and hung up the phone. So it shouldn't have been a complete surprise that somebody shows up when you call them. Sure. I understand that, Your Honor, and I appreciate that. He could have perhaps had somewhat of an idea of who they were. But the problem is that he wasn't looking in their direction when they walked in. They walked in, and they told him to get down. That caused him to turn towards them, and that's one of the actions that the officers are claiming caused them to fear for their safety. But they gave him an order, so he turned towards them. He asked them who they were. They didn't explain. They told him to get down on the ground. He says why. And then they tell him to get down again, and then he goes down, and then he gets tackled, and he ends up with a broken finger. How much time between the time that he called and hung up and the time that the officers entered the apartment or residence? Sure. I don't recall the specific amount of minutes that passed, Your Honor, but I believe it was relatively quick. The officers, I think, showed up within 10 or 15 minutes, and the argument between Mr. Oseah and his wife was still ongoing. So there wasn't a long period of time between the call and the officers showing up. And so two cases that I think are important for the court to look at, which are cited in our briefing, is a . . . Were the men uniformed officers or plainclothes? I'm sorry, Your Honor? Does the record show whether they were plainclothes or uniformed officers? Oh, they were definitely uniformed. Mr. Oseah was saying that they were wearing long jackets. This happened in April. He's saying that they were wearing jackets that covered up their uniforms. If I recall correctly, I believe the officers don't dispute that they may have been wearing jackets, but they're claiming that their jackets had some sort of police insignia on them. That would make it clear they were police. Mr. Oseah is claiming that the jacket didn't have any police labeling, and so he didn't know who they were. So these two cases that I think are important, they're both recent Atkinson and Small v. McChrystal. First of all, Atkinson adds to the Graham factors another factor that's important in some cases, and it's important in this one, and that's the severity of the injury. And so when courts evaluate whether use of force was excessive, the sort of injury that the plaintiff suffers is relevant in this analysis. And so this kind of goes back to my handcuffing hypothetical. If a person suffers minor scrapes in a situation where police officers have some basis to put handcuffs on them, that's considered reasonable. But when a person who is surrendering himself to the police after only several orders, in a situation like this where he had no idea who these people were, and then he went down voluntarily, suffers a broken finger after he's already on the ground, that's excessive force. You said several orders, and it seemed the briefing was a little unclear. I think the city says repeated orders. Maybe you say two. What is it from Mr. Oseah's standpoint? How many times did the officer say get down or some variation of that? Two times, Your Honor. Before he went on the ground, Mr. Oseah alleges that the officers gave him two commands. The first one was when he was turned away from them, which caused him to turn towards them, and the second one was after he asked who they were. Now, the officers are claiming that they gave Mr. Oseah numerous commands and he didn't comply, but that's not Mr. Oseah's version. Another factor that's important from these two cases, from Atkinson and Small, both of those cases involved police officers who essentially tackle the plaintiff in a very similar way as we have in this case. The question that this court asked in those cases is whether a reasonable jury could determine that the use of force under those circumstances was reasonable. I would also point out that both in Atkinson and Small, the plaintiff in those cases, the plaintiffs were on their feet. In Small, the plaintiff was actually walking away from the officer and the officer attacked him. Then in Atkinson, the plaintiff took away the police officer's phone. Actually, though, isn't Small different because here we have a domestic disturbance where there was, at least looking from the perspective of the officers, the potential for harm to the other person in the room? Sure. I would agree, Your Honor, that in that sense, Small is different, but I would also point out that Small involved a call to the police involving some sort of a giant bar fight. That's what the call was. When the police officers showed up, they were there to investigate a violent fight, and they suspected that Mr. Small was involved in that fight. Based on those cases, Your Honors, a reasonable jury in this case could also believe that Mr. Hosea had surrendered himself and that the officers tackled him in a way that was excessive, which caused him to suffer a broken finger. We would ask that that claim be remanded back for trial. With regards to the false arrest claim, there are two theories that the city has in terms of why that should be dismissed. There is one theory that Mr. Hosea committed domestic assault or that there was probable cause. Arguable probable cause is the term that Mr. Hosea committed domestic assault, and the other one is arguable probable cause for obstruction of legal process, and I'll talk about both of those briefly. With regards to obstruction of legal process, there is a case, State v. Krosky, Minnesota Supreme Court case, and this court has many times looked to the Minnesota Supreme Court to determine whether police officers have arguable probable cause to arrest a suspect for a certain crime. Two things in that case that are important here. First of all, that case holds that in order for there to be probable cause or for a person to be even possibly guilty of that offense, there has to be some sort of substantial hindering of the police officer's duties. What happened in this case is basically the city is arguing that if Mr. Hosea went down after the first command, that would not be obstruction, but just because he asked the question and several more seconds passed and then he went down after the second command, all of a sudden that raises probable cause for obstruction. After the first command or the second command, Mr. Hosea did not substantially hinder the police officer's investigation. He went to the ground, he voluntarily allowed himself to be taken into custody and handcuffed, the police officers conducted a full investigation, there was no interference, and there was certainly no substantial hindrance of the police officer's duties. So there was not sufficient arguable probable cause to arrest him for obstruction. On top of that, State vs. Kroski also talks about the fact that mere interrupting, the act of merely interrupting a police officer, that's also not enough. And this is clearly established case law in the state of Minnesota for many years. Police officers know that there has to be substantial interference and simply interrupting a police officer cannot form probable cause to arrest for obstruction. So there was no arguable probable cause to arrest for that offense. The other offense is domestic assault, and that's what district court focused on. District court decided that the officers, at the time when they handcuffed Mr. Hosea, that they actually arrested him at that point, and that they had arguable probable cause that he had committed domestic assault at that point. Problem with that theory, Your Honors, is that Mr. Hosea was not arrested when the police officers handcuffed him. This was a Terry seizure. The officers admitted in their depositions that they put him into handcuffs so they can just freeze the situation to investigate what happened. And as soon as he was handcuffed, they go ahead and they start their investigation, and they actually find out that Mr. Hosea was the victim in this case, that he was slapped with a slipper by his wife. They decide after their investigation that there was no probable cause to arrest him for domestic assault. So help us out with the timeline there. They put him in handcuffs, and did they immediately take him to the car? I believe they removed him immediately, and then one of the officers stayed outside with him, and the other officer stayed inside to investigate what happened. So the investigation you're referring to was an immediate investigation, which was an interview of his wife? Yes. And is it undisputed that at that point the officers decided not to arrest him for domestic assault? Yes, Your Honor. That's in their police report, and that's also in their deposition testimony. The officer who interviewed the wife spoke with the other officer, and they made a collective decision that there was not enough evidence to arrest him for domestic, but then they decided that since he obstructed, and in their view he obstructed by not going down after numerous commands, they decided they're going to arrest him for obstruction. So if they had unhandcuffed him and let him go at that point after he was outside with the officers, based on your theory, you wouldn't have an unlawful arrest claim? Absolutely. We're not challenging the fact that these officers had the right to freeze the situation, and that perhaps he would handcuff Ms. Rosea. We don't have an issue with that. What we do have an issue with is the fact that they actually booked him into jail after they investigated and found out that he didn't commit a domestic rather than releasing him back to his house. I'll save the rest of the time for rebuttal. Thank you, Mr. Lederman. Ms. Hampton-Flowers? Good morning, Your Honors. The Fourth Amendment precludes the use of unreasonable force, and it precludes an arrest without probable cause. The arrest of Mr. Hosea, the appellant in this case, and the force used to effect that arrest did not rise to the level of a constitutional violation because the officers had probable cause to arrest Mr. Hosea for obstruction of legal process as well as domestic assault, and the force used to effect that arrest was reasonable in light of the facts and the circumstances that were facing the officers at the time the force was used. And for those reasons, the court should affirm the district court's grant of qualified immunity to the officers and dismiss the claims of excessive force and false arrest. The facts upon which this case are based are very important, and they're pretty simple. This case didn't start because officers were on a proactive visit. This case started because the St. Paul Police Department received a 911 call, a call for emergency assistance from law enforcement. And when officers arrived at the scene to investigate the call, and let me back up just one second, that 911 call was interrupted. It was a 911 hangup, which means that no information was provided with regard to what that emergency was, who needed assistance, or what the officers were going to face when they got there. When they arrived at the address, before they got to the house, they heard yelling coming from inside the home. When they went inside of the home, they saw Mr. Hosea towering over his girlfriend at the time as she sat on a couch crying. Not only was he towering over her, he had his fists clenched, and he was yelling at her. When the officers saw that, they gave lawful orders for Mr. Hosea to get on the ground, and he didn't comply. Those are the undisputed facts that led to the force that the officers used. And Mr. Hosea's claim for excessive force cannot survive qualified immunity, first because he has not established that there was a violation of a constitutional right, or that the right was clearly established at the time the force was used. Well, as I understand his version of events, you've presented the first command, get down, and I think it's undisputed that he did not comply. But as I understand the factual scenario, there was another command, and he did comply, at least begin to comply at the time of the, we'll call it the tackle, the force that was used. Yes, Your Honor. So why isn't that different than sort of what you've just presented? He didn't comply, and so they could use the force. The reason it's important that, I will say, he did ignore, first, a lawful command from law enforcement officers. And he waited 30 to 60 seconds before he began to comply. And what's important to keep in mind is during this time frame, Mr. Hosea is not, Mr. Hosea is demonstrating aggression towards the officers. One clarification I think is important is Mr. Lederman indicated that it was the officer's command to get on the ground that got Mr. Hosea's attention, so that Mr. Hosea turned around and, oh my, the officers are there. What's the source of the 30-second to one-minute time frame? Your Honor, that comes from the depositions of Officers McGuire and Officer Stevens. In Officer McGuire's deposition, he indicates at pages 29 to 30 that it took 30 seconds for one minute between the time that the commands were given and Mr. Hosea's attempt at compliance. In Officer Stevens' deposition, he indicates that it took 30 seconds between the time of the command and the time that Mr. Hosea began to comply. There is no testimony from Mr. Hosea disputing that time frame or indicating a different time frame. So we have a period of time where the officers are trying to control the situation, and yes, there is, outside of summary judgment, there is a factual dispute in terms of how many commands were given, but for purposes of summary judgment, we accept that Mr. Hosea said two commands were given. Is there anything to indicate what a reasonable time is in terms of a reasonable time for compliance with the police command? No, Your Honor. There is no law that I have found that says that an individual has a certain amount of time to comply with an officer, nor is there any case law that says an individual has a right to ignore an officer's lawful commands, or anything that tells an officer that he cannot use force to arrest a suspect until that individual has ignored three commands. When you say the 30 to 60 seconds, what's our starting point? Is it the first command or the second command? The first command. So the second command comes in within that 30 to 60 second time period? The time frame is from the point that the officers gave a command and the point that Mr. Hosea begins to move toward the floor. So the first command, as you had said. Yes. When we look at the reasonableness of the force used based on the gram factors, we look at the crime at issue. And here the officers are not only investigating a 911 hang-up call, which the record shows is one of the most dangerous kinds of calls that an officer can go on,  it's once they get to that call, they have indicators that tell them this is a domestic assault. And that also is a very dangerous call for an officer to go on because people are highly agitated and emotional, they often become violent, and weapons are also often involved. This is the testimony of the officers during the discovery phase of this case. Mr. Hosea posed an immediate threat to the officers as well as Ms. Steins. Mr. Hosea is towering over her. The record indicates that he's within 2 to 3 feet of her, striking distance. One officer says it's 1 to 2 feet. He is within striking distance of her. Counsel, can you give me an image of this? When they walk in the door, is he between them and Ms. Steins, or does he come in? Do they come in where, in essence, they are between the two persons? Is there something in the record to indicate whether if he were closer to the potential victim, that that may be a different scenario than if they actually have an opportunity to be between the persons that are there? Understood, Your Honor. The officers are not between Mr. Hosea and Ms. Steins. The victim and the appellant are within 2 to 3 feet of each other, and the officers are behind the appellant. So there is no opportunity for the officers to get to Ms. Steins without going through or Mr. Hosea moving out of the way. So when the officers see Mr. Hosea towering over her, he now is distributing, excuse me, he turns to them and he's now displaying pre-attack indicators to the officers. Clis clenched fists, nostrils flaring, and now he's yelling at the officers. When the officers tell him to get down, instead of getting down, he begins to yell at them and questioning their presence in his home, and he ignores their command. The emergency still exists. The officers have not had the opportunity to determine who made that 911 call, why the call was made, and who interrupted it, and why. There is no case law that indicates that pushing a suspect from a kneeling position to a prone position is unlawful. And let's be clear, the push that was involved here, Mr. Hosea testified that he went down on one knee and he put one hand on the ground. Left knee went down first, right hand on the ground. He is not standing, he's not walking away as in the small case or in the Atkinson case. He's kneeling on one knee. The officers, according to Mr. Hosea and the officers, pushed him from his knee onto his chest. He doesn't fall over to the right or the left, he goes down flat. And there is no law that says that that's unlawful when you have a slow compliance or initial noncompliance from an individual. In Crumley v. City of St. Paul, this court said, not every push or shove, even if it may later seem unnecessary, in the peace of a judge's chambers, violates the Fourth Amendment. The push that the officers used in this case is exactly the push or shove that Crumley referred to. It was not objectively unreasonable for the officers to put Mr. Hosea on the ground to secure his arrest. Was there a factual dispute about whether there was any communication between the officers and Mr. Hosea at that time, maybe something like, I've got a bad leg, some kind of conversation during the compliance, the effort to comply? During the encounter, there is a reference by Mr. Hosea that he indicated his leg was injured. There is also a reference by an officer that said he had a bad back. The record isn't clear in terms of when Mr. Hosea specifically said, I have a bad leg. But the record is clear that after the commands were given, Mr. Hosea did not comply and instead began questioning the officers. It's undisputed that the officers did not verbally identify themselves in this situation? There is no record to establish that the officers said, we are the police. But the record is clear that these officers were in full uniforms. And contrary to the reference that counsel made, not wearing long jackets, the record shows that the officers were in full uniform with badges and patches on their jackets. And the record is clear that Mr. Hosea, while slow to recognize them as police officers, did in fact recognize they were police officers. In addition to that, the testimony from Mr. Hosea indicates that his son said, Dad, they're the police. So this is not a situation like Atkinson where you have a plainclothes officer surprising someone that doesn't recognize him as law enforcement. These were law enforcement officers, as the court recognized, that had been called to the address by Mr. Hosea. I'd like to turn next to the false arrest question. Qualified immunity also bars Mr. Hosea's false arrest claim because there is arguable probable cause to support both an arrest for domestic assault as well as an arrest for obstruction of legal process. Domestic assault is an act committed with intent to cause fear of immediate bodily harm or death in a household or family member. What about the factual scenario that we seem to have here? They follow up immediately and the officers themselves decide not to follow through with that particular charge. And so if we start from the point at which Mr. Hosea is outside, is that still a viable grounds for taking him in if the officers themselves had said not enough for domestic, let's go with obstruction? Your Honor, I think we need to take a step back. First of all, the decision to arrest Mr. Hosea was not made outside. At page 43 of Officer Stephen's deposition, he indicated or he testified that he planned to arrest Mr. Hosea once he was in handcuffs. So the decision to arrest had occurred prior to him being lifted to his feet and escorted outside. When it comes to the basis for the arrest, whether or not probable cause or arguable probable cause exists is not dependent upon the charge that's put forth. It is based upon what the officers observed. Well, I'm following you there. He wasn't ultimately charged. But again, I'm getting at that moment where I understand the officers said that we don't have that. We're not going to do that. We're going to rely on another. How does that factor into your reliance on arguable probable cause for the domestic assault arrest if we're really focused on once he's outside of the residence? Your Honor, I'd clarify for the court. The officers didn't say we don't have that. They decided that they weren't going to charge him. And the record shows that the charging process includes communication with a watch commander about what happens. But to clarify, the reason that the officers at least considered not charging domestic assault was because they know through their experience what happens when you have a victim that isn't willing to press charges. And because Ms. Steins wasn't willing to press charges, they knew that this is going to be a little more problematic. Not that they didn't have probable cause or arguable probable cause, but they knew they were going to secure the arrest based on the obstruction, not the domestic assault. But they did have probable cause for that. And I would refer the court to the Devenpeck decision, which is cited in our brief, as well as the Smithson decision cited in our brief. And with that, unless the court has any other questions, I would ask that the court affirm the district court's decision granting qualified immunity to the officers and dismiss both the excessive force and the false arrest claims. Thank you. Thank you, Ms. Hampton-Flowers. Mr. Lederman, your rebuttal. Thank you, Your Honor. Ms. Hampton-Flowers' arguments today demonstrate that there are not only legal issues that suggest this case should be remanded, but there appear now to be genuine disputes of fact in this case as well. And I want to go over a couple. First of all, this issue of 30 to 60 seconds, that comes from the police officers, not from Mr. Osea. There is no record of Mr. Osea stating that he stood up before he went. Did he put in any counter as to the time? Well, Your Honor, he was never asked by anyone in his deposition to provide a specific time frame. And I would say that if the court will read his deposition testimony, the sequence of events he describes is that he heard an order, he turned around, he asked why, he was ordered again, he asked why again, then he went down. If we look at the context of his testimony, he is disputing this 30 to 60 second claim and the city can't simply put that in there through their own testimony and then rely on that on summary judgment without even asking him that question. So that's the first issue. The second issue is with regards to the bad luck. Judge Kelly, you asked a question about that. Page 38 of his deposition testimony, Mr. Osea testifies that before he went on the ground, he told the officers that he had a bad luck or in the process of getting on the ground. So that's a factor the officer should have thought about as well. The final issue is Ms. Hampton Flowers discussed today that Mr. Osea was pushed to the ground. He actually testified on page 49 of his deposition that one of the officers jumped on his back. And so there is a difference there between approaching a suspect that you fear and pushing him to the ground rather than a police officer tackling a person and jumping on their back. The final issue I want to point out is back to the Small v. McChrystal case. That case indicates that if police officers take actions without identifying themselves as police officers, that that should be taken into account when determining whether their actions were reasonable. And the same thing applies here. Because the police officers in this case did not announce themselves prior to entering Mr. Osea's house, the momentary delay that Mr. Osea displayed shows that his actions were reasonable and that their decision to jump on his back was unreasonable under the circumstances. So we would ask for the case to be remanded. Thank you. Thank you, Mr. Lederman. The court thanks both counsel for your presence and the argument you provided to the court this morning. We'll take your case under advisement and render a decision in due course. Thank you.